# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | : CIVIL ACTION : : |
| Plaintiff, | : : No. 17-3983 |
| v. | : : |
| HOSPITALITY SUPPORTIVE SYSTEMS LLC, | : : : |
| Defendant. | : : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                        **FEBRUARY 12, 2018**

       Defendant Hospitality Supportive Systems LLC ("HSS") is a property and casualty insurance broker that solicits entities to join property and casualty insurance sharing programs. In late 2014, HSS, through its broker, solicited Plaintiff Endurance American Specialty Insurance Company's ("Endurance") interest in insuring participants in the HSS program. To determine whether it wanted to insure the HSS program and under what terms and conditions, Endurance requested loss information and other documents regarding claims and lawsuits in the previous four years that were asserted against the participants and potentially covered by another insurance company. HSS provided the information, which totaled sixty-two claims and $504,514 in paid losses and reserves, and allegedly represented that it was complete and accurate. Based on those representations, Endurance issued a policy of insurance to HSS. Fast forward approximately one year later, and HSS allegedly updated the previous loss information provided to Endurance that included seventy-five new claims and $5,000,000 in additional reserves. Endurance alleges that HSS knew about the additional claims and failed previously to

provide them to Endurance so that the insurance policy was issued on more favorable terms and conditions to HSS. Endurance also alleges breaches of contract related to the policy in other respects as well.

The Endurance corporate parent-subsidiary relationship is multi-layered.[1] HSS seeks to join Sompo Japan Nipponkoa Insurance Inc., Sompo International Holdings Ltd., and "Sompo International Insurance" (collectively, the "Sompo Entities"), who it alleges are the indirect parents of Endurance, in this action as Counterclaim Defendants as required parties pursuant to Federal Rule of Civil Procedure 19 or, if they are not deemed necessary, as parties that should be permissively joined pursuant to Rule 20.[2] For the reasons noted below, we deny HSS's Motion for Leave to Join the Sompo Entities as Counterclaim Defendants.

## I.    BACKGROUND

### A.    Factual Background[3]

#### 1.    *Allegations in Endurance's Complaint*

HSS is a property and casualty insurance broker. (Def.'s Mem. of Law in Support of Mot. for Leave to Join Sompo Entities as Counterclaim Defendants at 1; *see also* Compl. ¶ 5.)

---

[1] For context, we outline the corporate relationship between Endurance and its affiliates:

- Endurance is a wholly owned subsidiary of Endurance American Insurance Company;
- Endurance American Insurance Company is a wholly owned subsidiary of Endurance Assurance Corporation;
- Endurance Assurance Corporation is a wholly owned subsidiary of Endurance U.S. Holdings Corp.;
- Endurance U.S. Holdings Corp. is a wholly owned subsidiary of Endurance Specialty Insurance Ltd.;
- Endurance Specialty Insurance Ltd. is a wholly owned subsidiary of Sompo International Holdings Ltd.;
- Sompo International Holdings Ltd. is a wholly owned subsidiary of Sompo Japan Nipponkoa Insurance Inc.; and
- Sompo Japan Nipponkoa Insurance Inc. is a wholly owned subsidiary of Sompo Holdings, Inc.

(*See* Pl.'s Mem. of Law Opp'n Def.'s Mot. for Leave to Join Sompo Entities at 2-3 (citing Disclosure Statement Form, Doc. No. 31).)

[2] As we discuss below in the margin, "Sompo International Insurance" is merely a trade name and not a legal entity capable of being sued.

[3] We accept as true the allegations in the Complaint and Answer and Crossclaims in conducting our Rule 19 and 20 analyses. *See Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 170 (E.D. Pa. 2015).

Beginning in at least 2011, HSS secured insurance coverage for restaurants, bars, and taverns (the "HSS Participants") through insurance companies, such as Aspen Specialty Insurance Company ("Aspen"). (Compl. ¶ 7.) The HSS program would operate such that HSS would be the "Named Insured" or "First Named Insured" under the insurance policy and the HSS Participants would be named as additional insureds. (*Id.*) HSS would provide Aspen with information via "loss runs" about claims asserted against the HSS Participants that were potentially covered under the policies Aspen issued to HSS. (*Id.* ¶ 10.)

Endurance alleges that in late 2014, HSS, through its broker, approached Endurance to see whether it was interested in insuring the HSS program. (*Id.* ¶ 11.) Endurance underwrote the HSS program in late 2014 and early 2015. (*Id.* ¶ 12.) As part of the underwriting process, Endurance requested that HSS provide loss runs and other information reflecting the loss history of the HSS program, including claims that the Aspen/HSS policies potentially covered. (*Id.*) Endurance claims that in November 2014 through February 2015, HSS provided Endurance with the requested information, including the claims and lawsuits that had been asserted against the HSS Participants, the amounts paid to defend and settle those claims, and the reserves established in connection with the claims. (*Id.* ¶ 14.) The loss information HSS provided to Endurance represented that for the period beginning on December 31, 2011, there had been sixty-two reported claims against the HSS Participants with a total incurred (paid losses and reserves) of $504,514. (*Id.* ¶ 15.) Endurance alleges loss history is "critically important in underwriting insurance risks," and that it relied upon the loss information in determining whether to insure the HSS program and on what terms and conditions upon which it would provide that insurance. (*Id.* ¶ 13.)

Endurance issued policy number PGL10006800600 (the "Master Policy") to HSS that would cover the HSS program effective April 17, 2015 to May 10, 2016. (*Id.* ¶¶ 16, 29.) HSS was the only named insured under the Master Policy, but coverage would be extended to individual HSS Participants via "General Change Endorsements" for a single, one-year period from the date set forth in the endorsement. (*Id.* ¶ 18.) The Master Policy insured only those HSS Participants that satisfied certain underwriting criteria, such as a satisfactory inspection by an independent company, a maximum of three claims in any one year, no single claim over $15,000, and no liquor liability claims in the past three years. (*Id.* ¶ 17.)

HSS agreed to pay a $2,000,000 premium under the Master Policy. (*Id.* ¶ 23.) The Master Policy also included a rate schedule Endurance used to calculate the specific premiums it would charge the HSS Participants. (*Id.* ¶ 24.) Those premiums were initially charged against the $2,000,000 premium HSS paid under the Master Policy, but when the specific premiums calculated and charged under the rate schedule exceeded $2,000,000, Endurance would bill those amounts to HSS as additional premiums. (*Id.*) Endurance alleges that the specific premiums exceeded $2,000,000 and through May 10, 2016, the date on which the Master Policy expired, it had billed HSS a total of $942,000 in additional premiums in accordance with the rate schedule in the Master Policy. (*Id.* ¶¶ 25-26.) It also claims that upon receipt of the billings HSS did not question or challenge the amount of additional premiums, but has not paid any amount of them under the Master Policy. (*Id.* ¶¶ 27-28.)

In early 2016, Endurance began the process by which it would determine whether to renew the Master Policy. (*Id.* ¶ 30.) On January 15, 2016, it sent HSS a notice of non-renewal because it had concerns about how HSS was administering the program. (*Id.* ¶ 31.) For instance, Endurance alleges that HSS submitted risks that did not meet the underwriting criteria

4

set forth in the Master Policy and had requested that Endurance agree to extend retroactively coverage to HSS Participants. (*Id.* ¶ 32.) Endurance also learned that HSS was not authorized to transact business in all of the states in which it was transacting business in, although HSS had represented that it was authorized to conduct business in all fifty states when Endurance was determining whether to issue the Master Policy. (*Id.* ¶¶ 11, 33.)

On March 23, 2016, Endurance received updated loss runs under the Aspen/HSS policies that included seventy-five new claims and $5,000,000 in additional reserves. (*Id.* ¶ 34.) Endurance alleges that "many of the 75 new claims had been reported to HSS prior to February 2015." (*Id.* ¶ 35.) It avers that the additional claims were not part of the loss runs and other information provided in connection with Endurance's underwriting of the Master Policy. (*Id.*) Endurance alleges that it would not have issued the Master Policy on the terms and conditions that it did if complete and accurate loss information had been provided. (*Id.*)

Endurance represents that its relationship with HSS deteriorated following the May 10, 2016 expiration of the Master Policy. (*Id.* ¶ 37.) It claims that HSS failed to pay any of the additional premiums that were calculated and billed under the Master Policy and "had purported to bind, extend and/or renew coverage under the Master Policy for HSS Program Participants," even though only Endurance had authority to issue endorsements. (*Id.* ¶¶ 19, 38, 44.) Endurance also received notices of "financed premiums" reflecting, *inter alia*, that HSS was charging HSS Participants "exorbitant fees in connection with the services it was providing." (*Id.* ¶ 46.) For example, one financed premium notice indicated that an HSS Participant agreed to pay a $1,840 premium and $6,300 in taxes and fees, which was contrary to HSS's representation during the underwriting process that it typically charged its clients fees of "around 10%." (*Id.*)

Lastly, on October 19, 2016, Edward Snow, the "sole shareholder, principal and/or member of HSS," filed on behalf of HSS a complaint with the Pennsylvania Insurance Department regarding Endurance's non-renewal of the Master Policy. (*Id.* ¶¶ 6, 47.) The complaint alleged that the non-renewal notice was improper because it included the wrong expiration date. (*Id.* ¶ 47.) On November 21, 2016, the Pennsylvania Insurance Department issued a finding that Endurance's notice of non-renewal did not comply with Pennsylvania insurance laws. (*Id.* ¶ 48.)

### 2. *Allegations in HSS's Counterclaims*

On November 17, 2017, HSS filed an Answer and Counterclaims to Endurance's Complaint. The narrative material to HSS's counterclaims essentially begins with Endurance's notice of non-renewal in January 2016. (Def.'s Counterclaims ¶ 13.) HSS challenged the validity of the notice in the complaint sent to the Pennsylvania Insurance Department, alleging that it violated "applicable regulations" in stating the wrong renewal date (April 17, 2016 as opposed to May 10, 2016) and failing to provide an adequate explanation for the basis of its action. (*Id.* ¶¶ 13, 14.) HSS further alleges that by Order dated November 21, 2016, the Pennsylvania Insurance Department agreed with it and "directed that the [Master Policy] would 'remain in effect, as required by 40 P.S. §3403(b).'" (*Id.* ¶ 16.)

HSS claims that Endurance breached its obligations in failing and refusing to issue the renewal policy or renewed it without sending the policy to HSS. (*Id.* ¶ 17.) It avers that Endurance's actions were then contradictory. (*Id.* ¶ 18.) For example, on March 9, 2017, Richard Appel ("Appel"), Esquire, acting on Endurance's behalf, referenced renewal policy number PGL1008800600 in writing to HSS, even though Endurance never shared such renewal policy with HSS. (*Id.*) However, that same day, Endurance issued another notice of nonrenewal

effective May 10, 2017, that claimed it was sent due to misrepresentations on the part of HSS. (*Id.* ¶¶ 19-20.)

Contrary to Appel's March 9, 2017 letter, Michael Marinuzzi, Endurance's Assistant Vice President, denied a claim on June 20, 2017 on the basis that the Master Policy had never been renewed. (*Id.* ¶ 21.) In fact, HSS alleges that both before and after the Pennsylvania Insurance Department's November 21, 2016 ruling, Endurance denied all claims having a loss date after May 10, 2016 on the grounds that there was no coverage during that time period. (*Id.*)

## B. Procedural History

Endurance filed a seven-count Complaint against HSS in the Supreme Court of the State of New York, County of New York, on April 5, 2017. (*See id.*) The Complaint alleges various forms of fraud (Counts I and III), negligent misrepresentation/non-disclosure (Count II), rescission of the Master Policy (Count IV), breach of contract for failure to pay premiums (Count V), breach of contract for failure to comply with the underwriting criteria (Count VI), and declaratory relief (Count VII).[4] (*See id.*)

On May 4, 2017, HSS removed the action to the United States District Court for the Southern District of New York ("Southern District of New York") and subsequently filed a Motion to Dismiss and/or for Transfer of Venue. On August 29, 2017, the court issued an Order granting the Motion to Transfer and transferred the case to the United States District Court for the Eastern District of Pennsylvania. On November 3, 2017, we denied HSS's Motion to Dismiss the Complaint. HSS then filed its Answers and Counterclaims on November 17, 2017, which consist of claims against Endurance and the Sompo Entities for breach of contract (Count I), declaratory judgment/breach of contract (Count II), and bad faith pursuant to Pa. Cons. Stat. §

---

[4] Counts V, VI, and VII are pleaded in the alternative if the Master Policy is not rescinded. (*See id.*)

8371 *et seq.* (Count III). (*See* Def.'s Counterclaims.) On December 7, 2017, HSS filed the instant Motion for Leave to Join the Sompo Entities as Counterclaim Defendants.[5]

## II. LEGAL STANDARD

### A. Compulsory Joinder Under Rule 19

Rule 19(a)(1) provides that

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Joinder under Rule 19 requires courts to conduct a two-part framework. *Incubadora Mexicana*, 310 F.R.D. at 170 (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)); *see also Nationwide Prop. & Cas. Ins. Co. v. Shearer*, No. 14-0735, 2015 WL 1186008, at *7 (W.D. Pa. Mar. 13, 2015); *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686 (D. Del. 2010). First, the court must determine whether the absent party is "necessary" under subsections (a)(1)(A) or (a)(1)(B) of Rule 19. *Wheaton v. Diversified Energy, LLC*, 215 F.R.D. 487, 489 (E.D. Pa. 2003). If the absent party is necessary, then it should be joined so long as it does not destroy diversity. *Id.* "If joinder is not feasible because diversity would be destroyed . . . then the court must determine if equity deems the party indispensable under" the factors identified in Rule 19(b). *Id.* No analysis under Rule 19(b) is required if the court concludes in its Rule 19(a) analysis that the absent party is not necessary. *Incubadora Mexicana*, 310 F.R.D. at 170 (citing *Gen. Refractories Co.*, 500

---

[5] HSS requires leave of court because the deadline for joining additional parties was July 7, 2017 pursuant to the Southern District of New York's "Civil Case Management Plan and Scheduling Order."

F.3d at 313). The moving party bears the burden of demonstrating why the absent party should be joined. *Nat'l Cas. Co. v. Young*, No. 07-4836, 2008 WL 4414719, at *1 (E.D. Pa. Sept. 23, 2008) (citing *Core Constr. & Remediation, Inc. v. Vill. of Spring Valley*, No. 06-1346, 2007 WL 2844870, at *7 (E.D. Pa. Sept. 27, 2007)).

### B. Permissive Joinder Under Rule 20

Rule 20(a)(2) provides that

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). "Permissive joinder falls within the Court's sound discretion and is to be liberally granted." *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D. Pa. 2001). "However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Marshall v. Pa. Dep't of Corr.*, No. 12-0351, 2013 WL 1952442, at *1 (M.D. Pa. May 10, 2013).

## III. DISCUSSION

### A. Rule 19

HSS first argues that the Sompo Entities should be joined as Counterclaim Defendants to this suit because they are required parties under Rule 19.[6] (*See* Def.'s Mem. of Law in Support of Mot. for Leave to Join Sompo Entities as Counterclaim Defendants at 4-6.) Specifically, it

---

[6] As noted above, the "Sompo Entities" consist of Sompo Japan Nipponkoa Insurance Inc., Sompo International Holdings Ltd., and "Sompo International Insurance." Richard M. Appel, Endurance's Senior Vice President and Senior Counsel, has filed a Declaration in this matter, in which he states that "Sompo International Insurance" is merely a trade name and not a legal entity. (Pl.'s Mem. of Law Opp'n Def.'s Mot. for Leave to Join Sompo Entities, Ex. 1 ("Appel Decl.") ¶ 6.) "In order to be a litigant in legal proceedings, the litigant—regardless of whether it is a juridical entity or a natural person—must actually exist." *Marrakush Soc'y v. N.J. State Police*, No. 09-2518 *et al.*, 2009 WL 2366132, at *25 (D.N.J. July 30, 2009). Accordingly, Sompo International Insurance cannot be sued, and we will confine our analysis to Sompo Japan Nipponkoa Insurance Inc. and Sompo International Holdings Ltd.

9

argues that joinder is required because it could not be accorded complete relief in the absence of the Sompo Entities. (*Id.* at 5.) Endurance argues the exact opposite, contending that complete relief can be accorded because the counterclaims are all contract-based and the parties to that contract, Endurance and HSS, are already before the Court.[7] (Pl.'s Mem. of Law Opp'n Def.'s Mot. for Leave to Join Sompo Entities at 6-7.)

We agree with Endurance. Notably, on March 28, 2017, Sompo Holdings, Inc. acquired Endurance Specialty Holdings Ltd., whose indirect subsidiaries include Endurance. (*Id.* at 3.) Following that acquisition, Sompo International Holdings Ltd. became the successor to Endurance Specialty Holdings Ltd. (*Id.* (citing Appel Decl. ¶ 3).) Therefore, the Sompo acquisition became effective nearly two years after Endurance issued the Master Policy at issue in Endurance's claims and HSS's counterclaims. In other words, none of the Sompo Entities had a corporate affiliation with Endurance during the operative timeframe of Endurance's claims and HSS's counterclaims.[8] (*Id.* at 3.)

Endurance's Complaint details the procurement, issuance, and actions during and after it issued the Master Policy to HSS. (*See generally* Compl.) Endurance directly claims that "HSS was the only named insured under the Master Policy." (*Id.* ¶ 18.) HSS confirms the direct contractual relationship between Endurance and itself, alleging that "Endurance entered into an insurance contract with HSS" and "the terms of the parties' agreement are partially-embodied in the Master Policy identified in [Endurance's] Complaint." (Def.'s Counterclaims ¶ 2; *see also* Counterclaims ¶ 4 ("The Master Policy between Endurance and HSS . . . .").) At no point do the

---

[7] Neither party claims that Rule 19(a)(1)(B) is applicable.

[8] Moreover, Sompo International Holdings Ltd. is a Bermuda holding company that is not authorized to, and does not conduct any business in, the United States. (Appel Decl. ¶ 4.) Likewise, Sompo Japan Nipponkoa Insurance Inc. is a company headquartered in Tokyo, Japan, and is not licensed and does not conduct any business in the United States. (*Id.* ¶ 5.)

counterclaims allege that the Sompo Entities are parties to the Master Policy. Thus, as Endurance notes, HSS has not asserted a single factual allegation that ties the Sompo Entities to the dispute between Endurance and HSS regarding the Master Policy. HSS completely fails to explain, in either the Answer and Counterclaims or the instant Motion, how the Sompo Entities caused or aided in any of the acts that the counterclaims describe. It also fails to cite to a single portion of the Master Policy that obligates the Sompo Entities in any manner to the Master Policy. *See Wheaton*, 215 F.R.D. at 490 (stating that absent party that is not a party to an agreement is not necessary because complete relief could be accorded between the present parties). Accordingly, we fail to see how relief cannot be accorded between Endurance and HSS, the parties to the Master Policy, and deny HSS's Motion as it pertains to required joinder under Rule 19.

### B. Rule 20

HSS's alternative argument is that even if the Court finds that joinder is not compulsory under Rule 19, the Sompo Entities should be permissively joined under Rule 20. It argues that the claims against Endurance and the Sompo Entities arise out of the same transactions and occurrences and are subject to common questions of law or fact as they relate to the Master Policy, such as the extension of coverage, refusal to renew, refusal to adhere to the Pennsylvania Insurance Department's mandate, refusal to defend or indemnify HSS Participants, and the miscalculations of premiums due. (*See* Def.'s Mem. of Law in Support of Mot. for Leave to Join Sompo Entities as Counterclaim Defendants at 7-8.)

Based on the discussion above, we fail to see how the claims and counterclaims arise out of the same transaction and occurrence and are subject to common questions of law or fact. *See* Rule 20(a)(2). Indeed, HSS has failed to plead a single fact that ties the Sompo Entities to any

obligations or liabilities regarding the Master Policy.  Other than incorrectly identifying the corporate affiliations of the Sompo Entities and Endurance, HSS does not mention the Sompo Entities in a single factual allegation.  In addition, the Sompo Entities did not even have any affiliations with Endurance until nearly *two years after* Endurance and HSS entered into the Master Policy.

HSS seems to base its argument on the Sompo Entities being proper Counterclaim Defendants simply because they are the indirect parents of Endurance.  (*See* Def.'s Mem. of Law in Support of Mot. for Leave to Join Sompo Entities as Counterclaim Defendant at 2.)  However, "[i]t is a general principle of corporate law 'deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.'" *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)) (ellipses in original).  "[L]iability does not automatically confer to parents of subsidiary corporations.  '[M]ere ownership of a subsidiary does not justify the imposition of liability on the parent.'" *BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 414 (E.D. Pa. 2013) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)) (second alteration in original).  Given the longstanding principles of corporate law and the relationship between a parent and its subsidiary, HSS's bare-bones argument that the Sompo Entities are proper Counterclaim Defendants simply because they are the indirect parents of Endurance is weak.

In short, there is not a single allegation that the Sompo Entities assumed any rights or obligations under the Master Policy.  HSS cannot simply pull entities headquartered in foreign jurisdictions into this Court on the sole argument that they are the indirect parents of a party to an

action. Accordingly, we deny HSS's Motion to permissively join the Sompo Entities under Rule 20.

## IV. CONCLUSION

There is no basis to conclude that the Court cannot accord full and complete relief to the parties in this action with the Sompo Entities' absence. Therefore, they are not required to be joined under Rule 19. Further, there are no factual allegations to tie the Sompo Entities to any rights and obligations under the Master Policy. Accordingly, they will not be permissively joined under Rule 20.

An appropriate Order follows.