# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 17-3983 |
| HOSPITALITY SUPPORTIVE SYSTEMS LLC, | |
| Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                   **AUGUST 14, 2018**

      Plaintiff Endurance American Specialty Insurance Company ("Endurance") seeks $18,940.50 in attorneys' fees associated with its Motion for Contempt and Sanctions that it filed against Defendant Hospitality Supportive Systems LLC ("HSS") and non-parties Selective Law Group LLC ("SLG") and Selective Risk Management LLC ("SRM") (collectively, the "Selective Entities"). After considering the reasonableness of the request, we order HSS and the Selective Entities to be jointly and severally responsible for paying Endurance $2,689.00 in fees.

## I.     BACKGROUND

      The substantive allegations of Endurance's claims and HSS's counterclaims are discussed fully in the Court's February 12, 2018 Memorandum Opinion. *See Endurance Am. Specialty Ins. Co. v. Hospitality Supportive Sys. LLC*, No. 17-3983, 2018 WL 827410, at *1-4 (E.D. Pa. Feb. 12, 2018). As this matter pertains to a discovery dispute that led to a sanctions motion, we recount only those facts pertinent to the attorneys' fees issue presently before the Court.

This action was transferred to this Court from the United States District Court for the Southern District of New York on September 5, 2017.  Prior to the transfer, Endurance served its "First Request for Production of Documents" on HSS in July 2017.  (*See* Pl.'s Mem. Law Supp. Renewed Mot. Compel Production of Documents 4.)  HSS later served its "Response and Objections to the Requests," and the parties engaged in correspondence as to Endurance's issues and concerns regarding the responses and objections.  (*Id.*)  Unhappy with HSS's justifications for its objections, Endurance subsequently moved to compel production of its document requests.  In a series of orders dated November 3 and 13, 2017, we denied Endurance's motion without prejudice, but directed the parties "to engage in a reasonable exchange of discovery during the discovery period," which was set to conclude on January 8, 2018.  (Doc. Nos. 24, 26.)  The Court further allowed Endurance to file a renewed motion if the parties were "unable to agree on what constitute[d] a reasonable exchange of discovery or if HSS fail[ed] to produce its documents by an agreed deadline."  (Doc. No. 26.)  Endurance also served subpoenas on the Selective Entities on September 25, 2017.

After the parties conferred and HSS made a small document production, which Endurance contended pertained only to HSS's counterclaims, Endurance on December 13, 2017 filed a "Renewed Motion to Compel Production of Documents and Motion for an Extension of the Fact Discovery Completion Deadline."  The following week, Endurance filed a "Motion to Enforce Subpoenas Issued to Selective Risk Management LLC and Selective Law Group LLC."  HSS and the Selective Entities, who share the same counsel, filed timely responses in opposition to the motions.

Having reviewed Endurance's original and renewed motions to compel production of documents against HSS and its motion to compel compliance with the subpoenas against the

2

Selective Entities, we deemed particular document requests to be relevant and granted Endurance's motions in full. Specifically, we ordered HSS to produce "all non-privileged documents responsive to Requests 2, 4-9, 13, 16-18 and 22" and ordered the Selective Entities "to produce all documents responsive to the subpoenas." (Doc. No. 39 (the "Discovery Order").) Although HSS and the Selective Entities were served with the discovery requests and subpoenas in July 2017 and September 2017, respectively, we allowed thirty days, until March 5, 2018, to comply with our Discovery Order.[1] (*See id.*) Notably, neither HSS nor the Selective Entities moved for reconsideration.

The March 5, 2018 deadline came and passed, and all was quiet until Endurance filed its "Motion for Contempt and Sanctions" against HSS and the Selective Entities on March 14, 2018. (*See* Doc. No. 46 (the "Sanctions Motion").) Endurance's Sanctions Motion explains (with attached emails and a letter as exhibits) how HSS and the Selective Entities failed to comply with the Court's Discovery Order. In particular, counsel for HSS and the Selective Entities sent a March 5, 2018 cover letter enclosing a thumb drive with documents and stating, *inter alia*, that "SLG also has boxes of paper files that it is in the process of assembling for your inspection at a mutually convenient time." (*Id.*, Ex. A.) Picking up on the fact that the paper documents were "in the process" of being assembled, Endurance's counsel sent an email the following day, asking for opposing counsel to "identify the volume of Selective files still outstanding" and to "confirm that, with the exception of the 'paper files' referenced in your [March 5, 2018] letter, HSS[] [and the Selective Entities] have produced all documents responsive to the Court's [Discovery Order]." (*Id.*, Ex. B.) Counsel for HSS and the Selective Entities then answered Endurance's questions via email on March 9, 2018, stating that "we have not completed our

---

[1] Our Discovery Order also extended the deadline for fact discovery to May 2, 2018. (*See* Discovery Order.) The fact discovery deadline has been subsequently extended to October 29, 2018. (*See* Doc. No. 60.)

3

review of the electronic files." (*Id.*, Ex. C.) After numerous emails, calls, and voicemails in the ensuing days, Endurance's Sanctions Motion followed. On March 28, 2018, HSS and the Selective Entities responded to Endurance's Sanctions Motion and cross-moved for reconsideration of our Discovery Order.

Endurance sought sanctions and a contempt order against HSS and the Selective Entities under Federal Rules of Civil Procedure 37 and 45, respectively. Rule 37(b)(2) provides that, where a party "fails to obey an order to provide or permit discovery," the Court may "issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Significantly, the Court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the failure was substantially justified or other circumstances make an award of expenses unjust*." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). As to nonparties, Rule 45(g) states that the Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." District Courts have authority to order monetary sanctions against nonparties as to "[d]isobedience or resistance to [the Court's] lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3).

We held an evidentiary hearing on April 27, 2018 to determine whether HSS and the Selective Entities failed to comply with the Discovery Order and, if so, whether there were any justifiable reasons for the failure. At the outset, we note that HSS and the Selective Entities' counsel admitted that not all responsive documents were produced by the March 5, 2018 deadline in the Discovery Order. (Hr'g Tr. 22:3-6, Apr. 27, 2018.) As to testimonial evidence, the Court first heard from the Selective Entities' representative, Charles Michael O'Donnell ("O'Donnell"), who is the principal of SLG and was a co-owner of SLM. O'Donnell testified

4

that he is a solo practitioner and detailed how difficult it was to go through "130 or 135 boxes" to find paper documents responsive to the subpoenas served on the Selective Entities. (*See id.* at 32:3-16.) He further apologized to the Court for not bringing to our attention the fact that he could not comply with the Discovery Order sooner and that it was "a function" of needing "some time to get through the boxes." (*Id.* at 41:12-18.)

Regarding the electronic documents remaining to be produced, the Court heard testimony from Susan Alicia Weir ("Weir"), who is an associate at the law firm of Weir & Partners, LLP. Weir is the lead associate reviewing the electronic discovery and provided a background of the process to the Court. (*Id.* at 48:9-12.) To summarize briefly, she testified that she and the lawyers and paralegals at her law firm have reviewed hundreds of thousands of documents, many of which contain complex privilege issues, and have continued to do so up through the date of the hearing. (*See generally id.*)

On April 30, 2018, the Court entered an order granting in part and denying in part Endurance's Sanctions Motion. (*See* Doc. No. 52.) Specifically, we granted Endurance's motion to the extent it sought reasonable attorneys' fees in connection with preparing its Sanctions Motion, but denied it to the extent it sought to hold HSS and the Selective Entities in contempt. (*See id.*) In particular, we noted that HSS and the Selective Entities admitted to failing to comply with our Discovery Order, and we found it significant that they never advised the Court of the obstacles they faced in making their document production until they responded to Endurance's Sanctions Motion on March 28, 2018 (*over seven weeks after* the Discovery Order was entered). (*See id.*) Based on HSS and the Selective Entities' unacceptable failure to advise the Court or Endurance of not being able to comply with the Discovery Order, we found no substantial justification or other circumstances that would make an award of expenses unjust.

5

(*See id.*)  Thus, we allowed Endurance to "submit a Petition for Fees *only* in connection with preparing the instant [Sanctions Motion]."  (*See id.*) (emphasis in original).

On June 6, 2018, Endurance filed its "Petition for Fees in Accordance with the Court's April 30, 2018 Order," in which it seeks $18,940.50 incurred as a result of its preparation of the Sanctions Motion.  (Doc. No. 55.)  HSS and the Selective Entities filed their answer to Endurance's Petition for Fees on June 20, 2018.

## II. LEGAL STANDARD

When a party fails to obey a discovery order, a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  In addition, courts are empowered to order non-parties to pay monetary sanctions for such disobedience as well.  *See* 18 U.S.C. § 401(3).

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The party requesting fees has the burden of demonstrating "that its requested rates and hours are reasonable by submitting 'evidence supporting the hours worked and rates claimed.'"  *Curry v. United Parcel Serv., Inc.*, No. 17-2331, 2017 WL 4810701, at *2 (E.D. Pa. Oct. 25, 2017) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005)) (internal quotation marks omitted).  In conducting the lodestar analysis, the court is responsible for "closely scrutinize[ing] all fee arrangements to ensure fees do not exceed a reasonable amount."  *In re AT & T Corp.*, 455 F.3d

160, 169 (3d Cir. 2006). Once the lodestar is determined, the court then has discretion to adjust the fee for a number of reasons, including the results the requesting party obtained. *See Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citing *Hensley*, 461 U.S. at 434).

## III. DISCUSSION

### A. Hourly Billing Rates

We first begin with determining the appropriate billing rate that should be used in connection with Endurance preparing its Sanctions Motion. "Generally, 'a reasonable hourly rate is calculated according to the prevailing market rates in the community.'" *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (quoting *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)). The party requesting fees must produce "sufficient evidence of what constitutes the prevailing market rate 'for the essential character and complexity of the legal services rendered.'" *Mulero v. Walsh*, No. 15-1406, 2018 WL 1084235, at *12 (M.D. Pa. Feb. 28, 2018) (quoting *Smith*, 107 F.3d at 225). In assessing what constitutes a reasonable hourly rate, the court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). We may also consider the simplicity of the legal issues involved and the quality of counsel's moving papers in determining the reasonable hourly rate. *See Mulero*, 2018 WL 1084235, at *12 (citing *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81-82 (3d Cir. 2004)).

Once the requesting party sets forth evidence for its hourly rate, the resisting party "may contest the reasonableness of the rate with 'appropriate record evidence.'" *Id.* (quoting *Evans v.*

*Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001)). "Once the [resisting party] raises objections to the fee request, the district court has a 'great deal of discretion' to adjust the fee award in light of those objections." *Id.* (quoting *Rode*, 892 F.2d at 1183).

In this case, Endurance relies on the affidavits from Michael K. Robles ("Robles") and Steven Maniloff ("Maniloff") in support of its Petition for Fees. (*See* Doc. No. 55-2 ("Robles Aff."); Doc. No. 55-5 ("Maniloff Aff.").) Robles is a partner with the law firm Crowell & Moring LLP ("Crowell") in New York City, New York, and is the attorney principally responsible for representing Endurance in this matter. (Robles Aff. ¶¶ 1-2.) He has approximately nineteen years of legal experience and states that he charges Endurance $600 per hour. (*Id.* ¶¶ 3, 5.) Kelly Tsai ("Tsai") and Jared Schaeffner ("Schaeffner"), *inter alia*, also assisted with preparation of the Sanctions Motion.[2] (*Id.* ¶ 4.) Tsai has approximately eighteen years of legal experience and is currently senior counsel at Crowell. (*Id.* ¶ 4(a).) She charges Endurance $575 per hour for her time. (*Id.* ¶ 5.) Schaeffner, a 2017 graduate of Rutgers University School of Law, has less than one year of legal experience and charges Endurance $400 per hour. (*Id.* ¶¶ 4(c), 5.) Finally, Maniloff, a partner at the Philadelphia law firm of Montgomery, McCracken, Walker & Rhoads, LLP, is responsible for the representation of Endurance as local counsel in this matter. (Maniloff Aff. ¶¶ 1, 3.) He has approximately thirty years of legal experience and charges Endurance $310 per hour.

"The fee schedule established by Community Legal Services, Inc. ('CLS') 'has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in

---

[2] William Popalisky ("Popalisky") (counsel at Crowell), Louis Suazo ("Suazo") (paralegal), and Richard Kasman ("Kasman") (paralegal) also assisted with preparation of the Sanctions Motion. We omit their experience and billing rates because, as noted below, we find their time entries to be entirely excessive, redundant, and unnecessary.

8

Philadelphia.'" *Maldonado*, 256 F.3d 181, 187 (3d Cir. 2001) (alteration in original) (citing *Rainey v. Phila. Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993)). Endurance provides the CLS fee schedule to the Court, which reveals that an attorney with over twenty-five years of legal experience in Philadelphia charges $620-$650 per hour; an attorney with sixteen to twenty years of legal experience charges $450-$510 per hour; and an attorney with less than two years of legal experience charges $180-$200 per hour. (Robles Aff., Ex. 2 (CLS Fee Schedule).)

Endurance briefly argues that out-of-district fee rates should be used in lieu of the CLS fee schedule because the fees are for litigation misconduct and serve a deterrence purpose. (Pl.'s Mem. Law Supp. Pet. for Fees 2.) However, despite Endurance seeking the hourly rates of $600, $575, and $400 per hour for Robles, Tsai, and Schaeffner's time, respectively, we will utilize the CLS fee schedule, as it provides reasonable market rates of attorneys with various levels of legal experience in the United States District Court for the Eastern District of Pennsylvania. Moreover, we may look to the complexity of the legal issues involved and the quality of counsel's moving papers in determining the reasonable hourly rate. *See Mulero*, 2018 WL 1084235, at *12 (citing *Mantz,* 100 F. App'x at 81-82). Given that this was a sanctions motion that was eleven pages in length and cited just three cases, we do not deem the legal issues to be particularly complex.

The Court will therefore reduce Robles' hourly rate to $410 per hour; Tsai's rate to $410 per hour; and Schaeffner's rate to $180 per hour. The Court further finds that Maniloff's hourly rate of $310 to be reasonable, as it is far less than the CLS fee schedule indicates for an attorney with over twenty-five years of legal experience in Philadelphia.

## B. Reasonableness of the Time Charged

We next address whether the hours Endurance claims that it took to prepare its Sanctions Motion were reasonable. "[A] court awarding fees must 'decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary.'" *Interfaith*, 426 F.3d at 711 (internal quotation marks omitted) (quoting *Windall*, 51 F.3d at 1188). In doing so, a court "must conduct a 'thorough and searching analysis' to identify such charges." *Id.* (quoting *Evans*, 273 F.3d at 362). We must "'go line, by line, by line' through the billing records supporting the fee request" when determining the reasonableness of the requested fee. *Evans*, 273 F.3d at 362. The fee petition must "be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Washington*, 89 F.3d at 1037 (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir. 1992)).

In his affidavit, Robles asserts that various lawyers and paralegals from the Crowell firm have billed a total of 34.8 hours in preparing the Sanctions Motion, which translates to $17,886.50 after multiplying the hours by the pre-reduced hourly rates described above. (Robles Aff. ¶ 8.) Maniloff has billed 3.4 hours at a rate of $310 per hour, which equates to $1,054.00. (Maniloff Aff. ¶ 8.) Thus, Endurance seeks a total of $18,940.50 from HSS and the Selective Entities for preparation of its Sanctions Motion.

HSS and the Selective Entities naturally take exception with the reasonableness of Endurance's claimed fees. In particular, they argue that the Sanctions Motion was short in length, cited very few legal authorities, and was only partially successful. (Resp'ts' Mem. Law Opp'n Pl.'s Pet. for Fees 9.) They also specifically object to billing entries that they claim are redundant, unnecessary, and excessive. (*Id.*)

We agree with HSS and the Selective Entities and conclude that the hours Endurance claims are grossly excessive, unnecessary, and redundant. When taking into account the case caption, the underlying motion itself is just over one page in length, and the memorandum of law is eleven pages. The memorandum of law contains citations to two rules of civil procedure, three cases, and one federal statute, all of which appear in just two paragraphs and a corresponding footnote. The factual background and argument sections essentially restate what has occurred relevant to Endurance's request for production of documents (which has been restated in other filings to the Court) and simply sets forth the communications that took place after the Discovery Order's March 5, 2018 deadline. Given the lack of legal authority cited, and the fact that the Sanctions Motion essentially restates what has been briefed in numerous filings thus far to the Court, it is abundantly clear that billing a total of 38.2 hours for filing an eleven-page memorandum of law is grossly excessive.[3] Moreover, numerous entries are redundant and unnecessary. Accordingly, we will limit the hours Endurance requests as follows:

- Robles' time for drafting the Sanctions Motion remains at 1.4 hours. *See* Appendix A.[4]

- Schaeffner's time for researching and preparing an email memorandum regarding remedies available for a non-party's failure to obey an order requiring compliance with a subpoena is adjusted downward from 3.9 hours to 1.5 hours. *See id.*

- Robles' time for meeting with Tsai about drafting the Sanctions Motion is adjusted downward from .2 hours to 0 hours. *See id.*

---

[3] For instance, Robles, who is a partner at Crowell and holds himself out as an attorney who has "developed [a] specialized, sought-after expertise in the litigation of insurance related disputes" and has "worked at three of the world's most prominent law firms," (Robles Aff. ¶3), billed a total of 15.6 hours for drafting and revising a memorandum of law that is just eleven pages in length (when taking into account the case caption), cites very few legal authorities, and, at bottom, simply argues that HSS and the Selective Entities should be sanctioned because they did not obey a discovery order. Somehow, an additional 22.6 hours were spent on more research, revisions, and fact and citation checking of this relatively simple motion and brief.

[4] Attached to the Court's Memorandum Opinion are Appendices A and B, which list the time entries Robles and Maniloff have provided for their respective law firms, as well as the claimed hours, revised hours, revised hourly rates, and total amount awarded. The descriptions for the time entries are taken verbatim from Robles and Maniloff's affidavits.

- Robles' time for drafting and revising the Sanctions Motion is adjusted downward from 4.6 hours to 2.0 hours. *See id.*

- Tsai's time for her discussion with Robles and research regarding the Sanctions Motion is adjusted downward from 1.2 hours to .2 hours. *See id.*

- Robles' time for continued review and revision of the Sanctions Motion is adjusted downward from 4.8 hours to 1.0 hours. *See id.*

- Tsai's time for research and her discussion with Robles of the standard under Rule 37(b)(2) is adjusted downward from 2.8 hours to .5 hours. *See id.*

- Robles' time for revision of the Sanctions Motion and his discussion with Popalisky is adjusted downward from 4.6 hours to 0 hours. *See id.*

- Tsai's time for review of the Sanctions Motion, along with review of case law and coordination of the filing, is adjusted downward from 1.7 hours to 0 hours. *See id.*

- Suazo's time for assistance with fact-checking the Sanctions Motion is adjusted downward from 2.2 hours to 0 hours. *See id.*

- Popalisky's time for review and revision of the Sanctions Motion is adjusted downward from 1.2 hours to 0 hours. *See id.*

- Popalisky's time for review and revision of the revised Sanctions Motion and his conference with Robles is adjusted downward from 1.2 hours to 0 hours. *See id.*

- Popalisky's time for review of correspondence from HSS's counsel for selection of documents to cite is adjusted downward from .4 hours to 0 hours. *See id.*

- Popalisky's time for review of final paralegal changes to the Sanctions Motion is adjusted downward from .1 hours to 0 hours. *See id.*

- Popalisky's time for final review of exhibits is adjusted downward from .2 hours to 0 hours. *See id.*

- Kasman's time for fact and quote checking, Westlaw research, Bluebook review, proof reading and editing, and assembling electronic and hardcopies of the Sanctions Motion is adjusted downward from 4.3 hours to 0 hours. *See id.*

- Maniloff's time for a telephone call with Robles regarding a possible Rule 37 motion against HSS and the Selective Entities is adjusted downward from .3 hours to .2 hours. *See* Appendix B.

- Maniloff's time for research concerning Local Rule of Civil Procedure 26.1(f) certification is adjusted downward from 1.4 hours to 0 hours. *See id.*

- Maniloff's time for drafting emails to Tsai about a Local Rule of Civil Procedure 26(f) issue is adjusted downward from .3 hours to 0 hours. *See id.*

- Maniloff's time for review and revision of the Memorandum of Law in Support of the Sanctions Motion is adjusted downward from .9 hours to .2 hours. *See id.*

- Maniloff's time for drafting the Sanctions Motion's certificate of service is adjusted downward from .1 hours to 0 hours. *See id.*

- Maniloff's time for preparation and filing of the Sanctions Motion is adjusted downward from .4 hours to 0 hours. *See id.*

In adjusting the numerous attorneys and paralegals' hours to those reasonably necessary to prepare the Sanctions Motion, Robles is credited with 4.4 hours; Tsai with .7 hours; Schaeffner with 1.5 hours; and Maniloff with .4 hours. After multiplying Robles ($450), Tsai ($450), Schaeffner ($180), and Maniloff's ($310) reasonable hourly rates by the hours reasonably necessary to prepare the Sanctions Motion, the lodestar comes to $2,689.00. This amount is strongly presumed to be reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

### C. Other Considerations to Adjust the Award

Although the lodestar is presumed to result in a reasonable fee, there are "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434; *see also Windall*, 51 F.3d at 1185. "[A]djustments to the lodestar are within the discretion of the district court. . . . [but] [t]hat discretion, however, is not unlimited." *Windall*, 51 F.3d at 1189 (internal citation omitted) (citing *Hensley*, 461 U.S. at 436-37). The Third Circuit has noted that "a district court should award fees commensurate with the hours spent litigating *successful* claims." *Mulero*,

2018 WL 1084235, at *15 (emphasis in original) (citations omitted).  "However, the Circuit has also noted that there is no need to separate the hours spent litigating successful claims as opposed to unsuccessful claims if the claims 'involve a common core of facts or related legal theories.'" *Id.* (quoting *Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 476 (3d Cir. 1989)).

Although Endurance's Sanctions Motion was only partially successful because the Court did not hold HSS or the Selective Entities in civil contempt, the basis for a finding of contempt and sanctions was premised on identical conduct.  Accordingly, there is no need for the Court to separate hours spent for litigating successful claims and unsuccessful claims, and the lodestar will not be adjusted.

## IV. CONCLUSION

For the reasons set forth above, Endurance's Petition for Fees is granted, and HSS and the Selective Entities are jointly and severally liable for paying Endurance $2,689.00 in attorneys' fees for preparation of the Sanctions Motion.[5]

An appropriate Order follows.

---

[5] Endurance also requests the opportunity to make a supplemental submission identifying additional costs associated with its Sanctions Motion, such as time taken to communicate with opposing counsel, reviewing and considering the response to Endurance's Sanctions Motion, and preparing for and attending the evidentiary hearing.  Given the clear unreasonableness of hours claimed in preparing the Sanctions Motion, we decline to award Endurance further fees and deny its request to make a supplemental submission.

**Appendix A: Crowell & Moring LLP's Fees**

| Date | Initials | Description | Hours Claimed | Hours Revised | Modified Hourly Rate | Amount |
|---|---|---|---|---|---|---|
| 3/10/2018 | MR | Begin drafting motion for discovery sanctions/contempt. | 1.4 | 1.4 | $450.00 | $630.00 |
| 3/11/2018 | JGS | Research, and prepare email memorandum re, remedies available for a nonparty's failure to obey a court order requiring the nonparty to comply with a subpoena; send email memorandum to Mr. Robles for review. | 3.9 | 1.5 | $180.00 | $270.00 |
| 3/12/2018 | MR | Meeting with K. Tsai re: drafting of motion for sanctions/contempt. | 0.2 | 0.0 | $450.00 | $0.00 |
| 3/12/2018 | MR | Drafting/revising motion for sanctions/contempt against HSS/Selective. | 4.6 | 2.0 | $450.00 | $900.00 |
| 3/12/2018 | KT | Discuss with M. Robles motion for sanctions/contempt in connection with HSS and Selective's failure to comply with court order; research and draft insert re same. | 1.2 | 0.2 | $450.00 | $90.00 |
| 3/13/2018 | MR | Continue review and revise motion for sanctions/contempt. | 4.8 | 1.0 | $450.00 | $450.00 |
| 3/13/2018 | KT | Research standards for imposing Rule 37(b)(2) sanctions; discuss same with M. Robles. | 2.8 | 0.5 | $450.00 | $225.00 |
| 3/14/2018 | MR | Revising motion for contempt/sanctions, discussions with W. Popalisky re: same, and exchange e-mails re: same. | 4.6 | 0.0 | $450.00 | $0.00 |
| 3/14/2018 | KT | Review and drafts submissions in connection with motion for contempt/sanctions; review case law relevant to required filings; coordinate finalization and filing of same. | 1.7 | 0.0 | $450.00 | $0.00 |
| 3/14/2018 | LS | Assist with fact-checking Endurance's Motion for Contempt and Sanctions. | 2.2 | 0.0 | N/A | $0.00 |
| 3/14/2018 | WP | Review and revise draft motion for sanctions for HSS failure to comply with court's order for production. | 1.2 | 0.0 | N/A | $0.00 |
| 3/14/2018 | WP | Review and revise revised draft motion for sanctions and conference with M. Robles regarding same. | 1.2 | 0.0 | N/A | $0.00 |
| 3/14/2018 | WP | Review correspondence regarding HSS counsel correspondence for selection of documents to cite. | 0.4 | 0.0 | N/A | $0.00 |
| 3/14/2018 | WP | Review and approve final paralegal changes to motion for sanctions. | 0.1 | 0.0 | N/A | $0.00 |

| Date | Tkpr | Description | Hours | | | |
|---|---|---|---|---|---|---|
| 3/14/2018 | WP | Final review of exhibits to motion. | 0.2 | 0.0 | N/A | $0.00 |
| 3/14/2018 | RSK | Fact/record and quote check; West law research; analyze subsequent history, Bluebook, proof, edit, review exhibits and statutes cited and quoted; assemble electronic and hard copy exhibits re Motion for Contempt and Sanctions. | 4.3 | 0.0 | N/A | $0.00 |
| | | **Crowell & Moring LLP's Total Reasonable Attorneys' Fees** | | | | **$2,565.00** |

### Appendix B: Montgomery, McCracken, Walker & Rhoads, LLP's Fees

| Date | Initials | Description | Hours Claimed | Hours Revised | Hourly Rate | Amount |
|---|---|---|---|---|---|---|
| 3/13/2018 | SM | Telephone call with M. Robles re possible Rule 37 motion against HSS and Selective for failure to produce all documents required by February 2, 2018 order. | 0.3 | 0.2 | $310.00 | $62.00 |
| 3/14/2018 | SM | Research concerning Local Civil Rule 26.1(f) certification for sanctions motion. | 1.4 | 0.0 | $310.00 | $0.00 |
| 3/14/2018 | SM | Drafting e-mails to K. Tsai re Local Civil Rule 26.1(f) issue. | 0.3 | 0.0 | $310.00 | $0.00 |
| 3/14/2018 | SM | Reviewing and revising Memorandum of Law in Support of Motion for Contempt and Sanctions. | 0.9 | 0.2 | $310.00 | $62.00 |
| 3/14/2018 | SM | Drafting certificate of service for Motion for Contempt and Sanctions. | 0.1 | 0.0 | $310.00 | $0.00 |
| 3/14/2018 | SM | Preparing and filing Motion for Contempt and Sanctions. | 0.4 | 0.0 | $310.00 | $0.00 |
| **Montgomery, McCracken, Walker & Rhoads, LLP's Total Reasonable Attorneys' Fees** | | | | | | **$124.00** |